## JAS. N. BEADLES *v.* HARTMUS & CO.

1. FACTOR. *Consignment to. What control he has over the goods.* Whenever a consignment is made to a factor for sale, the consignor has a right generally to control the sale thereof, if no advances have been made or liabilities incurred on account thereof, and the factor is bound to obey his orders. If, however, the factor makes advances, or incurs liabilities on account of the consignment, by which he acquires a special property therein, then the factor has a right to sell so much of the consignment as may be necessary to reimburse such advances or meet such liabilities, unless there is some existing agreement between himself and the consignor which controls or varies the right. Whether any such instructions were given, and when and under what circumstances, were questions left to the determination of the jury.

   Case cited: Brown *v.* McGraw, 14 Peters, 489.

2. SAME. *Evidence. Letters may be read to jury. When.* The court say, the expression of a wish or desire may, under certain circumstances, amount to a positive command; so we think that the correspondence was properly submitted to the jury for their interpretation in its relations to the other evidence in the cause, and we cannot say that it was error in the court to leave it to the jury to draw their own conclusions from the written correspondence and other evidence submitted to them.

### FROM MADISON.

Appeal from a judgment of the Circuit Court. G. B. BLACK, Judge.

CARUTHERS & MALLORY for complainant.

MUSE & BUFORD for defendants.

DEADERICK, J., delivered the opinion of the court.

Beadles *v.* Hartmus & Co.

Plaintiff in error appealed to this court from a judgment of the Circuit Court of Madison county.

Hartmus & Co. consigned fifty-five bales of cotton to the firm of Beadles, Wingo & Co., commission merchants in New Orleans, which they allege was sold contrary to their instructions and to their damage.

J. T. Haley, a witness for plaintiffs below, and member of the firm of Hartmus & Co., testified on the trial that in September, 1871, Slayden, a member of the firm of Beadles, Wingo & Co., called on and solicited his house in Jackson to do business with their house in New Orleans. Witness stated that he asked him if his house should ship them cotton and should desire it held, whether he would so hold it for a short time, as witness desired to know what to depend on. Slayden agreed to hold it, if convenient, and when not convenient, they would notify plaintiffs. He also agreed to furnish currency to buy cotton when desired, and to send it by express when telegraphed for the amount desired. Shortly after this, witness states that his firm commenced shipping cotton to the firm of Beadles, Wingo & Co., sometimes receiving remittances, and at others drawing on them through the bank. On the 20th December, 1871, Hartmus & Co. telegraphed to Beadles, Wingo & Co. to send $4,000, informing them that they would on the next day ship them fifty-three bales of cotton. On the next day, 21st December, Hartmus & Co. shipped to them fifty-five bales, informing them by letter of the shipment, and desiring them, if they could conveniently do so, to hold the cotton until the

15th January.   On the 22d of December, having re-
ceived a telegraphic dispatch from Beadles, Wingo &
Co. that it was impossible for them to send the cur-
rency requested, Hartmus & Co. wrote informing them
of the receipt of the dispatch, and that they had that
evening drawn on them for $4,042.53 in favor of the
Bank of Madison, and desiring them to protect the
draft, and stating that they had shipped to them the
day before fifty-five bales of cotton, invoice amounting
to $4,777.33.   On the 25th of December, Beadles,
Wingo & Co. acknowledged the receipt of the letters
of Hartmus & Co. of 21st and 22d December, and
the invoice for fifty-five bales of cotton.   The cotton
was received on the 30th December.   On the 4th of
January, Hartmus & Co. again telegraphed: "Hold
fifty-five bales—instruction by mail."   On same day
they wrote desiring them to hold the fifty-five bales
until the 1st of February.   In answer to this letter,
Beadles, Wingo & Co., on the 16th January, replied
that they regretted that the fifty-five bales had been
sold on the 2d of January, and subsequently wrote
that the cotton had been sold, without knowing to
whom it belonged.   The product of the sale was
$4,607.34.   The letter seems to have been written in
reply to one from Hartmus & Co., complaining that
the sale had been made before the 15th of January,
and making a claim for damages, and proposed to
refer the controversy to arbitration, and inviting a
proposition of compromise, and denying that they were
bound to hold the cotton.

Slayden was examined by defendants below, and

testified that neither he nor his firm made any agreement with Haley or his firm to hold his or their cotton.

It is now insisted that the Circuit Judge erred in his instructions to the jury in charging as follows:

"If plaintiffs gave instructions how and when said cotton should be put upon the market, and if said instructions were given contemporaneously with the consignment, and if received by Beadles, Wingo & Co. before the cotton was put upon the market, or before they had made any advancements, or incurred any liability for the plaintiffs on account of said shipment, they were bound to observe the instructions."

This instruction, correctly construed, we do not think is subject to any objection. It does not mean that plaintiffs might give instructions to hold the cotton, which would be binding upon the defendants, without their assent, although given contemporaneously with the assignment, if they had made advances or incurred liabilities. On the contrary, the court stated if the defendants had made advancements to or for the plaintiffs, the plaintiffs would have no right to instruct defendants to hold the cotton for a better market, until they had indemnified or offered to reimburse the defendants for such advancements; and defendants might well put the cotton upon the market, as prudent business men, if plaintiffs failed to reimburse them.

The charge, we think, is in substantial conformity to the principles laid down by Story, J., in the case of *Brown* v. *McGraw*, 14 Peters, 489, where it is

Beadles *v.* Hartmus & Co.

said: ·"We understand the true doctrine on this subject to be this: Wherever a consignment is made to a factor for sale, the consignor has a right generally to control the sale thereof, if no advances have been made or liabilities incurred on account thereof, and the factor is bound to obey his orders. If, however, the factor makes advances, or incurs liabilities on account of the consignment, by which he acquires a special property therein, then the factor has a right to sell so much of the consignment as may be necessary to reimburse such advances or meet such liabilities, unless there is some existing agreement between himself and the consignor which controls or varies the right."

Whether any such instructions were given, and when and under what circumstances, were questions left to the determination of the jury.

For plaintiffs in error it is insisted that the letter of the 21st December contained no instructions, but a simple request that they should hold the cotton until the 15th January. The draft of Hartmus & Co. drawn upon the cotton was paid by plaintiffs in error the 26th December, after they had received the letter of the 21st December. The cotton was received the 30th December, and sold the 2d January. The court did not construe the language of the letter of the 21st December, or of any of the correspondence between the parties, but allowed the several letters offered to go to the jury, to be by them construed, with the other evidence in the cause.

In the case already cited in 14 Peters, it is said

that, "as a general rule, the interpretation of written instruments belongs to the court, and not to the jury. But there are cases in which, from the different senses of the words, or their obscure and indeterminate reference to unexplained circumstances, the true interpretation of the language used may be left to the consideration of the jury, for the purpose of carrying into effect the real intention of the parties. This is especially applicable to cases of commercial correspondence, where the real objects, intentions and agreements of the parties are often to be arrived at only by allusions to circumstances which are imperfectly developed."

The expression of a wish or desire may, under certain circumstances, amount to a positive command; so we think that the correspondence was properly submitted to the jury for their interpretation in its relations to the other evidence in the cause, and we cannot say that it was error in the court to leave it to the jury to draw their own conclusions from the written correspondence and other evidence submitted to them.

The testimony of Haley was, that Slayden agreed that his firm would hold the cotton consigned, if desired, if convenient to them to do so; if not convenient, then they would notify Hartmus & Co.

The language of the letter of Hartmus & Co., advising them of the shipment, is: "If you can conveniently hold this shipment until about the middle of January, we would like for you to do so." In a subsequent part of this letter they express the opin-

Snowdon *v.* The State.

ion that cotton will advance by the 15th of January, and enable them to clear at least ten dollars on each bale, and add, "for this reason we make the above request."

Upon the facts in evidence, we cannot say that the verdict is not sustained by the evidence, and there being no error in the charge, the judgment must be affirmed.